UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DAN E PETERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00458-JMS-MJD |
| | ) | |
| SUPERINTENDENT Wabash Valley Correctional Facility, | ) ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Dan Peterson's petition for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. IYC-16-11-0178. For the reasons set forth below, Mr. Peterson's petition is granted.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

On November 22, 2016, Investigator P. Prulhiere completed a Report of Investigation of an incident occurring at PCF. That report reads as follows:

> IC Code: 35-48-4-10.5(e)(1)(B) Dealing in a synthetic drug or lookalike substance. Amount exceeding 5 grams. On October 20, 2016 at approximately 10:05 am, I, Investigator P. Prulhiere was advised that green packages were observed thrown over the fence near the Health Services Unit from a car that was passing by. Having been notified of the circumstances involved in this incident, I used information that was already on file to narrow down a search parameter to find contraband that may have been introduced to the facility in this manner. I reviewed activity in Housing Unit South G Unit and observed activity consistent with offenders in the process of hiding contraband. A search team was assembled and sent to G Unit where an Officer did retrieve two green packages from the G Unit latrine. During the process of investigation (summarized in confidential case number 16-IYC-0171) I observed the arrival of the packages to the facility, the movement of the packages to Housing Unit South G Unit and the attempted hiding of the items in G Unit latrine. I observed the command and control by the use of a cell phone and the attempts made by offenders to conceal this activity. As a result of this investigation, Offender Dan Peterson 988303 was observed on video using a cell phone while in the Health Services Unit in conjunction with this trafficking activity. Offender Peterson remained in close proximity to other offenders identified in this activity and clearly reacts to the arrival of the package as it was thrown over the fence near the Health Services Unit. Offender Peterson's role in the activity and the contents of the packages is included in case number 16-IYC-0171. The items contained in the packages were inventoried and a complete inventory of the items is included in the official case packet. Among the items present was a quantity of synthetic marijuana exceeding a weight of 5 grams. The presence of the synthetic drug is the reason this charge was filed for dealing in a synthetic drug.

Dkt. 13-1 at 2. On the same date, Investigator Prulhiere issued a Report of Conduct flowing from the same incident:

> On November 20, 2016, as a result of this investigation, I, Investigator P. Prulhiere, have found sufficient evidence to charge Offender Dan Peterson 988303 with the violation of State Law IC 35-48-4-10.5(e)(1)(B) Dealing in a synthetic drug or lookalike substance. Amount exceeding 5 grams.

*Id.* at 1.

On November 30, 2016, Mr. Peterson was served with a Notice of Disciplinary Hearing. Dkt. 13-2. Upon receipt of that notice, Mr. Peterson stated he wished to call Lieutenant Kent,

2

Officer Cross, and Officer Rogers to testify at his hearing. *Id.* Mr. Peterson projected that these officers would testify either that they did not see him involved in the trafficking incident, or that they searched him when leaving the medical unit and found no contraband. *Id.* Mr. Peterson also requested to review video showing his alleged participation in the trafficking activity and his return to his housing unit from the medical area. *Id.*

A hearing was held on December 20, 2016, and Mr. Peterson was found guilty of violating a state law by dealing in a synthetic drug. Dkt. 13-8 at 8. Mr. Peterson's sanctions included 360 days in disciplinary segregation, loss of 360 days' earned credit time, demotion from credit class I to credit class III, and the imposition of a suspended sanction from a prior case. *Id.* The hearing officer's report indicates that he considered staff reports, Mr. Peterson's own statement, the security video, and records from a confidential investigation file in reaching his decision. *Id.*

Mr. Peterson was not permitted to review the security video he requested. Instead, he was provided with a written summary of the video prepared by the hearing officer. *See* dkt. 13-8 at 8. The summary states:

> On 12/19/2016 at 9:35 am I, DHO L. Glenn did review video for an incident that took place at HSU on 10/20/2016 at approximately 10:00 am as requested by offender Peterson, Dan #988303. On camera Med. Waiting Area/Lobby ip62 on 10/20/2016 at 10:02:10 am offender Peterson, Dan #988303 is observed entering the HSU Lobby area then as he walks in he walks out view of the Officer and is seen pulling a cord from the right sleeve of his jacket and extends it with his left hand and then places the end of the cord into his left ear and Peterson then walks out of the HIS entrance door. Offender Wilson, Michael #990969 enters the lobby of HSU and shortly after he enters the lobby offender Peterson enters and sits in a chair with the cord still coming from his right hand (which is concealed within his sleeve) to his left ear. Peterson and Wilson are seen talking to each other then Peterson picks his right hand up and is seen putting the opening his sleeve close to his mouth and talking into it. Peterson is seen looking toward the area of the perimeter fence several times while he is sitting in the chair then he stands up and goes back out of the entrance door. Peterson comes back in and talks to Wilson and continues to look toward the perimeter and Wilson moves closer to the entrance door and goes off camera. Wilson then goes out of the door of HSU and Peterson walks up to the doorway and then turns around and comes back in the building and

3

> sits in a chair and removes the ear piece from his left ear and Wilson stands outside the door and after a few moments he leaves the area walking away from HSU. Peterson remains in HSU and is observed hugging another offender who then walks off camera then Peterson and several other offenders walk out of the door of HAS then they all come back into the lobby of HSU then at 10:11:22 am offender Peterson exits the HSU building along with several other offenders. I also reviewed camera HUS [sic] South Dorm G/H Hallway for the date 10/20/2016 from 10:00 am until 10:30 and at no time am I able to see offender Peterson on the camera footage.

*Id.*

It does not appear that any of the witnesses whose testimony Mr. Peterson requested testified at his hearing. Instead, it appears that prison officials obtained written statements from Lieutenant Kent and Officer Cross. Dkts. 13-3; 13-4. Those statements appear to be consistent with the testimony anticipated in Mr. Peterson's request. Mr. Peterson's petition indicates that the officer he identified as Rogers in his evidence request was actually named Roberts. Dkt. 1 at 2. The respondent does not dispute that Officer Roberts was not called to testify or even to present a written statement, even after the error was identified and Mr. Peterson requested testimony from Officer Roberts at the hearing.

### III. Analysis

Mr. Peterson asserts several bases for habeas relief, but it is unnecessary to assess them all here. The Court finds that the hearing officer denied Mr. Peterson due process by refusing to permit testimony from Officer Roberts.

**A.      Timeliness of Mr. Peterson's Request for Witness Testimony**

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton* (*Piggie II*), 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). There is no indication that Mr. Peterson's request to present testimony from Officer Roberts was denied based on safety concerns. Rather, the respondent argues that Mr. Peterson's

request for testimony from Officer Roberts was untimely and that the hearing officer therefore could not have deprived Mr. Peterson of due process by denying him the opportunity to present that testimony.

In support of this argument, the respondent cites *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999), for the proposition that a prison official does not violate due process by denying a request for witness testimony made the day of the hearing. *See* dkt. 13 at 7. However, *McPherson* considered the case of an inmate who failed to request testimony from a witness until *after* his hearing and held that he could not "demand a new hearing based upon evidence that was available to him at that prior hearing." *McPherson*, 188 F.3d at 786. In subsequent cases, the Seventh Circuit has indicated that a request for evidence is timely if it is made before or during the hearing. *See Piggie v. McBride* (*Piggie I*), 277 F.3d 922, 925 (7th Cir. 2002) (citing *McPherson*, 188 F.3d at 786) ("We agree that if Piggie failed to make such a request *either before or at the hearing*, then the CAB could not have denied him due process by not considering the request." (emphasis added)); *Felder v. McBride*, 121 F. App'x 655, 657–58 (7th Cir. 2004) (citing *Piggie I*, 277 F.3d at 925) ("If Felder was denied the exculpatory videotape evidence *when he asked for it at the hearing*, or if he was not given a chance to request it beforehand, then his defense would have been impermissibly compromised." (emphasis added)).

There is no dispute that Mr. Peterson made a request during his hearing to present testimony from Officer Roberts. As such, his request was timely.

**B.      Relevance and Harmless Error**

"[P]risoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Additionally,

5

harmless error analysis applies to a hearing officer's denial of an inmate's request to present witness testimony. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie II*, 674 F.3d at 678.

The respondent does not argue that Officer Roberts's testimony would have been irrelevant, repetitive, or unnecessary—and with good reason. The hearing officer's report and the materials he considered indicate that Mr. Peterson's disciplinary conviction were based on the conclusion that he used a cell phone to coordinate with confederates. The question of whether Mr. Peterson actually possessed a cell phone was therefore highly relevant to the proceeding. Mr. Peterson indicated that Officer Roberts would testify that he strip-searched Mr. Peterson after he left the medical unit and found no cell phone or other contraband. As such, the Court cannot conclude that Officer Roberts's testimony would have been irrelevant or unnecessary. And, because Officer Roberts was not permitted to testify, it is impossible to conclude that his testimony would have been duplicative of other officers' statements.

Because Mr. Peterson's use of a cell phone was central to his conviction, the Court does not find that the hearing officer's refusal of Officer Roberts's testimony was harmless. No evidence before the hearing officer confirmed as a fact that Mr. Peterson used a cell phone during this incident. Although Investigator Prulhiere's report stated that he observed Mr. Peterson using a cell phone, the Court understands that statement to be based on Investigator Prulhiere's review of security video. *See* dkt. 13-1 at 2. The hearing officer's review of the video found—and the Court's *ex parte* review confirms—that Mr. Peterson extended a cord from his clothing and that he placed his hands to his ear and his mouth while in the medical unit. *See* dkt. 13-6. But the hearing officer did not observe as a fact that Mr. Peterson was using a cell phone because no cell phone was visible in the video. Officer Roberts's testimony that he strip-searched Mr. Peterson after he left the medical unit and found no cell phone may not have proven his innocence, but it would have

undermined the conclusion that the cord was connected to a cell phone. Because that conclusion is foundational to Mr. Peterson's conviction for dealing, the omission of Officer Roberts's testimony could not have been harmless.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Because Mr. Peterson was denied due process in this disciplinary proceeding IYC-16-11-0178, his disciplinary conviction and the sanctions imposed must be **vacated and rescinded**. Mr. Peterson's petition for a writ of habeas corpus is **GRANTED**. Mr. Peterson's good-time credits and credit class must be **immediately restored**, and his new release date must be calculated accordingly.

Insofar as this Order resolves Mr. Peterson's petition, his motion requesting the status of his case, dkt. [22], is **granted**.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 6/12/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DAN E PETERSON
988303
Wabash Valley Correctional Facility - 500
6908 S Old US Hwy 41
Electronic Service Participant – Court Only

Marjorie H. Lawyer-Smith
INDIANA ATTORNEY GENERAL
marjorie.lawyer-smith@atg.in.gov